# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **JORDAN ELY**<br>850 1/2 W. Exchange St.<br>Akron, Ohio 44302<br><br>    Plaintiff,<br><br>**CITY OF AKRON, OHIO**<br>C/O<br>Akron Law Director<br>172 S. Broadway, Suite 200<br>Akron, Ohio 44308<br><br>and<br><br>**WARREN SPRAGG (In his Official and Individual Capacities)**<br>C/O<br>Akron Police Department<br>217 S. High Street<br>Akron, Ohio 44308<br><br>C/O<br>Akron Law Director<br>172 S. Broadway, Suite 200<br>Akron, Ohio 44308<br><br>and<br><br>**THOMAS J. PHILLIPS (In his Official and Individual Capacities)**<br>C/O<br>Akron Police Department<br>217 S. High Street<br>Akron, Ohio 44308<br><br>C/O<br>Akron Law Director<br>172 S. Broadway, Suite 200<br>Akron, Ohio 44308 | CASE NO.:<br><br>JUDGE:<br><br><br><br><br><br><u>**PLAINTIFF'S COMPLAINT**</u><br><br><br><br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff Jordan Ely, by and through counsel, brings this Complaint against Defendants City of Akron, Ohio, Warren Spragg, and Thomas Phillips (collectively, "Defendants"), and makes the following allegations upon personal knowledge as to Plaintiff's own acts and upon information and belief, and states as follows:

## INTRODUCTION

1. This cause of action arises out of Jordan Ely's July 1, 2023, encounter with members of the Akron Police Department at 970 Copley Road, Akron, Ohio.

2. Plaintiff alleges, without limitation, that on July 1, 2023, as Jordan was with his son driving down Copley Road to shop at the Family Dollar, Defendants Spragg and Phillips pulled Jordan over, hopped out of their police cruiser and immediately arrested Jordan. During this arrest, Defendants Spragg and Phillips used excessive and unnecessary force when they punched, struck, and assaulted Jordan Ely without justification. Jordan was not a threat to Defendant police officers, did everything possible to comply, and was in no way resisting arrest. Jordan's son and members of the community were forced to watch Defendant police officers brutalize Jordan with no remorse for their actions.

3. Plaintiff further alleges, without limitation, that the City of Akron knew or reasonably should have known, participated in, endorsed, condoned, and/or ratified the unconstitutional conduct of Defendant police officers.

4. This cause of action is for money damages brought pursuant to 42 U. S. C. §1983 to redress the deprivation of the rights of Jordan Ely under the color of law by members of the Akron Police Department.

5. Plaintiff also brings this action pursuant to *Monell v. Department of Social Services of City of New York*, 463 U.S. 658 (1978), and its progeny.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over federal questions pursuant to 28 U.S. C. § 1331, §1343, and 42 U. S. C. §§ 1983,1988.

7. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C.§1391 (b) because all incidents and events giving rise to the action occurred in the Northern District of Ohio, and upon information and belief, all parties reside in this Judicial District.

## PARTIES

8. At all times relevant to this action, Plaintiff was a resident of the City of Akron, Summit County, Ohio.

9. At all times relevant to this action, Defendant police officers are/were employed as police officers for Defendant City of Akron, Ohio, and are residents of Summit, Portage, and/or Trumbull County, Ohio.

10. At all times relevant to this action, Defendant City of Akron, Ohio is a municipal corporation located in Summit County, state of Ohio.

11. At all times relevant to this action Defendant City employed all Defendants and all Akron police officers identified herein.

12. Redress is being sought from all Defendants in their official and individual capacities, and all Defendants were acting under and/or outside of color of law and/or pursuant to the policies, customs, and/or usages of the City of Akron.

## FACTUAL ALLEGATIONS

13. On July 1, 2023, Defendants Spragg and Phillips were on routine patrol in the city of Akron when they allegedly observed Plaintiff, Jordan Ely, driving an automobile and exhibiting three criminal indicators. Indicator number one: Plaintiff was driving on the West Side of

Akron in an alleged high crime area. Indicator number two: Plaintiff drove in the opposite direction of Defendant police officer. Indicator number three: Plaintiff did not look in the direction of Defendant police officers.

14. These three criminal indicators led Defendant police officers to run Plaintiff's license plate, where they discovered Plaintiff had a misdemeanor non-violent warrant our for this arrest.

15. Defendants Spragg and Phillips followed Plaintiff into the parking lot of Family Dollar and turned on their lights and sirens as Jordan was parked and attempting to get his son out of the vehicle to shop at the Family Dollar.

16. Defendant police officers immediately got out of their vehicle and began aggressively approaching Plaintiff. As they are approaching, Plaintiff is clearly heard and seen on body-worn camera footage saying, "I have my son in the car."

17. Defendant police officers utterly failed to communicate the reason for the stop and did not even allow Plaintiff the opportunity to comply before they rushed Plaintiff, began putting their hands on Plaintiff, and used force that was excessive and not needed for the situation.

18. Defendant police officers were abrasive, and immediately grabbed Plaintiff and attempted to take him to the ground. Plaintiff is heard on body-worn camera video pleading for the officers to stop and asking why they are doing this to him.

19. As Defendant Officers are taking Plaintiff to the ground, Officer Spragg repeatedly punches Plaintiff in the face multiple times, causing injury.

20. As Defendant Officers have control over Plaintiff, they continue to drag him around on the ground and assault Plaintiff before placing him in their police cruiser. Despite Plaintiff's pleas for help and to catch his breath, Defendant police officers used excessive and unnecessary force in punching, assaulting, and smashing Plaintiff's face into the concrete.

4

21. Plaintiff was unarmed and did not at any point physically or verbally threaten the officers in question, nor did he attempt to flee or resist arrest.

22. Plaintiff struggled to protect himself from the brute force and received several punches to his face. Plaintiff's face was also smashed into the concrete and Plaintiff was dragged around while Defendant police officers used excessive and unnecessary force.

23. Witnesses and neighbors stood around pleading for them to stop, questioning the officers' actions and observing their conduct. (Cell phone video footage captured this event and recorded the comments of witnesses.)

24. On lookers continued to yell at Defendant police officers to stop abusing Plaintiff who was just trying to protect himself from further injury.

25. None of the Defendant police officers had knowledge of any information to reasonably believe that Plaintiff was armed, violent, or potentially dangerous.

26. None of the Defendant police officers ever had a reasonable fear of imminent bodily harm, nor did they have a reasonable belief that any other person was in danger of imminent bodily danger from Plaintiff at any point in time.

27. Plaintiff was placed in a police car and taken to the county jail.

28. Plaintiff was subsequently charged with resisting arrest.

29. Plaintiff plead not guilty to the charge and raised an affirmative defense of excessive or unnecessary force.

30. On January 30, 2024 a jury trial was held and the jury returned a verdict of NOT GUILTY, in favor of Plaintiff.

31. The Jury found Defendant police officers' testimony not credible and found that Defendant police officers used excessive and unnecessary force.

32. Plaintiff suffered physical injuries to his face, eyes, lips, and back because of being punched and dragged around on concrete by members of the Akron Police department.

## CLAIMS ALLEGED
### COUNT 1
**(Excessive Force Against Defendant Police Officers)**

33. All preceding paragraphs are incorporated as if fully re-written herein.

34. This claim is brought pursuant to Title 42 U.S.C. § 1983.

35. Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

36. The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."

37. While acting under color of state law, the Defendant police officers deprived Plaintiff of his well-established right to be free from excessive force by engaging in conduct described above.

38. At all times relevant to this action, Plaintiff had the well-established constitutional right not to be subjected to excessive force while being arrested, even if his arrest could have been otherwise proper.

39. On July 1, 2024, the Defendant police officers were only permitted to use the amount of force necessary under the circumstances to arrest Plaintiff.

6

40. A Jury in the underlying criminal proceeding found that Defendant police officers did not use the amount of force necessary under the circumstances to arrest Plaintiff.

41. A Jury in the underlying criminal proceeding found that Defendant police officers used excessive force when arresting Plaintiff.

42. At all times relevant to this matter, the Defendant police officers were clothed with the authority of the state and misused that authority.

43. In this case, Plaintiff claims the Defendant police officers used excessive force when they arrested and/or seized the person of Decedent, to wit:

    a. Defendant police officers punched and struck Plaintiff with while Plaintiff was not resisting arrest; and

    b. Defendant police officers otherwise applied force to Plaintiff while Plaintiff was not resisting arrest.

44. As a direct and proximate result of Defendant police officer's actions, as set forth above, Plaintiff has been damaged, including but not limited to, physical injuries, endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

45. Defendants are jointly and severally liable for this conduct.

### COUNT 2
### (Municipal Liability Pursuant to *Monell* Against Defendant City of Akron)

46. All preceding paragraphs are incorporated as if fully re-written herein.

47. Defendants acted pursuant to one or more interrelated de facto polices (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of the City of Akron and its Police Department.

48. The City of Akron, at all times relevant herein, approved, authorized, ratified, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently is directly liable for the acts of those agents pursuant to 42 U.S.C. § 1983.

49. Despite the facts and circumstances surrounding the assault and subsequent arrest of Plaintiff that clearly demonstrate that the actions of the Defendant police officers were unreasonable and unlawful, upon information and belief, the City of Akron has failed to effectively investigate or impose any discipline on Defendant police officers for their illegal behavior and false reporting (directly or by omission of pertinent information and/or facts).

50. Akron Police failed to conduct independent and unbiased investigations into alleged misconduct of their officers.

51. Sergeant Michael Stanar of the Akron Police Department was responsible for conducting the investigation to determine whether Defendant police officers' actions were justified, however, instead tried to justify the officers' actions by promoting an investigation based on the theory that Plaintiff was an imminent threat to police officers, that Plaintiff attempted to flee, and that Plaintiff resisted arrest.

52. Defendant Spragg has been the subject of a federal lawsuit involving the same behavior.

53. An Akron citizen was peacefully protesting the killing of Jayland Walker when Defendant Spragg violently and without warning rushed him, tackled him, beat, and punched him.

54. This lawsuit was settled in Plaintiff's favor.

55. Since then, there has been no investigation into Defendant Spragg's conduct. Had the City if Akron conducted a proper investigation after this incident and took proper disciplinary action been taken, Plaintiff would not have been assaulted and his constitutional rights violated by Defendant Spragg.

56. Defendant Spragg has a history of using excessive force and Defendant City of Akron has done nothing but approve, authorize, ratify, and acquiesce in the unlawful and unconstitutional conduct of Defendant Spragg.

57. Similarly, Defendant Phillips has also been the subject of a federal lawsuit involving similar conduct.

58. An Akron citizen was pulled over in a traffic stop. Defendant Phillips drug this individual out of his vehicle, tackled, punched, and struck this individual in the back with his knee all while being handcuffed.

59. This lawsuit was also settled in Plaintiff's favor.

60. Since then, there has been no investigation into Defendant Phillips' conduct. Had the City of Akron conducted a proper investigation after this incident and took proper disciplinary action been taken, Plaintiff would not have been assaulted and his constitutional rights violated by Defendant Phillips.

61. Defendant Phillips has a history of using excessive force and Defendant City of Akron has done nothing but approve, authorize, ratify, and acquiesce in the unlawful and unconstitutional conduct of Defendant Phillips.

62. Upon information and belief, no truly independent investigation of Defendant police officers' actions has ever been conducted in any use of force incident and Defendant police officers have not been properly supervised or disciplined by the Akron Police Department.

63. Defendant City of Akron is aware that its officers engage in violent behavior that involves excessive force in violation of the Fourth Amendment which disproportionately involves African Americans, to wit:

    a. The excessively forceful and violent arrest of Charles Hicks II on February 7, 2021, an unarmed black male who was arrested with an officer's knee near his neck while the officer smothered his mouth and nose with snow as he lay on the ground following his refusal to leave the porch area of his home;

    b. The excessively forceful and violent arrest of Patrick King on October 21, 2018, an unarmed white male who was tased, knocked to the ground, and punched while on his stomach for refusing to identify himself;

    c. The excessively forceful and violent arrest of Jamon Pruiett and LaTrent Redrick on October 1, 2017, two Black males with no prior criminal records who were shot by an Akron police officer while standing outside of an downtown area nightclub and making no threat toward any officer;

    d. The excessively forceful and violent arrest of Dr. Dale Leonhardt on December 5, 2015, an unarmed white male whose arm was broken by an Akron police officer

  following a minor traffic violation (failing to come to a full stop prior to turning right at a traffic light);

 e. The excessively forceful and violent arrest of Tamika Williams on October 26, 2012, an unarmed Black 13-year-old girl whose arm was broken by an Akron school resource officer after he put her arm behind her back, pushed her face-first into lockers, and lifted her off the ground.

64. At all times relevant, the Defendant City of Akron and its Police Department had interrelated de facto policies, practices, and customs which included, *inter alia*:

 a. Offering lawsuit waivers in exchange for dropping the charges against individuals who are subjected to excessive force during their arrest;

 b. The failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and/or otherwise control City of Akron police officers who engage in unjustified use of excessive and unreasonable force, false arrest, and/or malicious prosecution;

 c. Officers are trained and aided on how to avoid prosecution for their violent actions by re-phrasing and artfully summarizing their violent actions and encounters with citizens in police documentation;

 d. The police code of silence;

 e. The failure to properly investigate the use of excessive and unreasonable force against civilians, especially African Americans, by City of Akron Police officers;

 f. The failure to properly discipline, monitor, counsel and otherwise control City of Akron police officers who engage in unjustified use of excessive and unreasonable force, false arrest, and/or malicious prosecution; and/or

    g.  The failure to properly train and supervise City of Akron police officers with regard to *inter alia* restricting the airways of defendants while being restrained by six to seven other officers.

    h.  The automatic ratification of Akron police officers' actions by their immediate supervisors and department leadership despite clear evidence to the contrary.

65. For years, the City of Akron has acquiesced to a culture of violence in the Akron Police Department by abandoning its duty under the Charter of the City of Akron to exercise control over the Police Department and by avoiding any study of the number of excessive force cases and violence involved in the arrest of citizens within the City of Akron.

66. For years the City of Akron has fostered and condoned a culture of violence in the Akron Police Department by abandoning its duty under the Charter of the City of Akron to remove police officers and/or exercise control over the Police Department by allowing city employees to restrict and/or interfere with and/or hamper the oversight activities of the Office of the Police Auditor

67. The aforementioned de facto polices, practices, and customs of the Akron Police Department include a pattern of acts of excessive use of force and other willful, wanton, and/or reckless behavior leading to harmful consequences to citizens.

68. The Akron Police Department has engaged in little or no meaningful investigation or disciplinary action in response to this pattern of Misconduct, thereby creating a culture or climate where members of the police can and do escape their acts of misconduct with impunity.

69. This pattern is the moving force behind the conduct of the Defendant police officers in the unjustified use of excessive force against Plaintiff Jordan Ely – who did not present a

threat to officers when officers repeatedly punched, drug, and otherwise assaulted Plaintiff. This event is not an isolated incident of unconstitutional policing within the City of Akron by its officers.

70. The policy, practice and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including unlawful searches, seizures, and prosecutions, despite their obligations under police regulations to do so, and also includes police officers remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability or criminal charges, in cases where they and their fellow officers have engaged in misconduct.

71. The de facto polices, practices and customs of failing to hire, train, and supervise, monitor, discipling, transfer, counsel and/or control police misconduct and the code of silence are interrelated and exacerbate the effects of each other, to institutionalize police lying and immunize police officers from discipline.

72. That the unconstitutional actions of the Defendants as alleged in this complaint were part and parcel of a widespread municipal policy, practice and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policy makers, as well as by a wide range of other police officials, officers, and divisions of the Department.

73. The policies, practices and/or alleged customs alleged in this complaint, separately and together, are the proximate cause of the injuries to Plaintiff Jordan Ely because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, and that they were immune from

disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct.

74. But for the belief that they would be protect – both by fellow officers and the City of Akron Police Department – from serious consequences, Defendants would not have engaged in the conduct that resulted in the injuries to Plaintiff.

75. The interrelated polices, practices and customs, as alleged in this complaint, individually and together were maintained, and implemented with deliberate indifference and encouraged the Defendant police officers to commit the acts alleged in this complaint against the Plaintiff.

76. The City of Akron therefore acted as the moving force behind the direct and proximate causes of the violations of Jordan Ely's constitutional rights and all injuries and damages suffered by him.

**COUNT 3**
**(State Law Claim for Assault and Battery Against Defendant Police Officers)**

77. All preceding paragraphs are incorporated as if fully re-written herein.

78. The actions of Defendant police officers towards Plaintiff created in them the apprehension of an imminent, harmful, and offensive touching, and constituted a harmful touching, made knowingly and without legal justification.

79. Defendant police officers accomplished this harmful, non-consensual touching by means of manual touch, by punching, dragging, and other methods described more fully above.

80. Defendant police officers directly and proximately caused this touching.

81. The actions of Defendant police officers thereby constituted assault and battery against Plaintiff.

82. As a direct and proximate result of this conduct by Defendant police officers, Plaintiff suffered and continues to suffer injuries and damages as described above, including, but not limited to, physical injury, adverse consequences for attending court proceedings, emotional trauma and distress, loss of reputation, loss of liberty, and other damages set forth in this Complaint.

83. In the course of this conduct Defendants acted under color of law and within the scope of their employment.

84. Defendants are jointly and severally liable for this conduct.

### COUNT 4
**(State Law Claim for Negligence – Willful, Wanton, and/or Reckless Conduct Against Defendant Police Officers)**

82. All preceding paragraphs are incorporated as if fully re-written herein.

83. Defendant police officers failed to exercise due care and acted in a willful, wanton, and reckless manner while engaged in police functions and activities that culminated in the above-described damages and injuries to Plaintiff Jordan Ely.

84. Defendant police officers' reckless, wanton, and/or willful conduct proximately caused the physical and psychological damages to Plaintiff.

85. As a direct and proximate result of the misconduct of Defendant police officers, Plaintiff suffered and continues to suffer injuries and damages.

86. Defendants are jointly and severally liable for this conduct.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that judgement be entered in their favor on all counts and pray the Court award the following relief:

A. Compensatory damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial, for the violation of Plaintiffs' rights;

B. Punitive damages in an amount to be determined at trial for the Defendants' willful, wanton, malicious, and reckless conduct;

C. Attorneys' fees and the costs of this action pursuant to law; and

D. All other relief which this Honorable Court deems equitable and just.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury of the within matter.

Dated: June 27, 2024                                   Respectfully submitted,

*Imokhai Okolo*
Imokhai Okolo
(Ohio Bar #100277)
**THE OKOLO LAW FIRM LLC**
850 ½ W. Exchange St.
Akron, OH 44302
Telephone: (216) 236-8857
Email: iokolo@okololawfirm.com

*Counsel for Plaintiff*

16